[Cite as *State v. Simmons*, 2018-Ohio-273.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

## JOURNAL ENTRY AND OPINION
### No. 105449

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# RECO J. SIMMONS

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-607866-A

**BEFORE:** Kilbane, J., E.A. Gallagher, A.J., and Keough, P.J.

**RELEASED AND JOURNALIZED:** January 25, 2018

**ATTORNEY FOR APPELLANT**

Michael I. Marein
Marein and Bradley
526 Superior Avenue, Suite 222
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By: Kevin E. Bringman
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

**{¶1}** Defendant-appellant, Reco Simmons ("Simmons"), appeals the trial court's denial of his Crim.R. 29 motion for acquittal. For the reasons set forth below, we affirm.

**{¶2}** In July 2016, Simmons was charged in a three-count indictment arising from his arrest by Cleveland police following a traffic stop. Cleveland police searched the vehicle he was operating and recovered a stolen handgun from underneath the driver's seat of the vehicle. Simmons was charged with one count of carrying a concealed weapon, improperly handling a firearm in a motor vehicle, and receiving stolen property.

**{¶3}** In December 2016, this matter proceeded to a jury trial. The following evidence was adduced at trial. Cleveland police officer James Thomas ("Officer Thomas") testified that in the early morning of July 7, 2016, he was on patrol duty with Cleveland police officer Allen Zenz ("Officer Zenz"). Officer Thomas explained that as he and Officer Zenz patrolled the area of East 116th Street and Union Avenue, he observed an approaching vehicle without its headlights on. Officer Zenz used his spotlight to signal to the driver of the vehicle. Officer Thomas explained that the spotlight allowed him to see the driver and the two passengers in the vehicle _ a front-seat passenger and a back-seat passenger seated on the passenger side of the car. Officer Thomas later identified the driver of the car as Simmons.

**{¶4}** Officer Thomas testified that Simmons did not turn the car's lights on after Officer Zenz signaled. Simmons kept driving southbound on East 116th Street, so

Officer Zenz made a u-turn to follow Simmons's vehicle. As Officer Zenz turned the patrol car around, Simmons made an abrupt left turn eastbound on Imperial Avenue and immediately pulled into a driveway.

{¶5} Officer Thomas testified that Officer Zenz pulled up behind the vehicle, both officers exited the patrol car, and then began to approach the vehicle from the rear. Officer Thomas approached the passenger side of the vehicle, and Officer Zenz approached the driver's side. As Officer Thomas looked into the back passenger window, he observed Simmons reach towards his right side near the center console and down towards the floor of the vehicle. Officer Thomas demonstrated Simmons's movements for the jury and testified that these movements put him on "heightened alert" and caused him to fear for officer safety, so he asked Simmons for his identification and ordered him out of the car. The officers patted Simmons for weapons, and Officer Zenz placed him in the patrol car.

{¶6} Officer Thomas explained that while Officer Zenz secured Simmons, he kept surveillance on the two passengers. He testified that both passengers sat in their seats, and he did not observe either passenger make any movements. The officers removed both passengers, patted them both for weapons, and placed them in the back seat of the zone cars of assisting officers.

{¶7} After the passengers were secured, Officers Thomas and Zenz searched the vehicle. Officer Thomas explained that he and his partner decided to search the vehicle because of the reaching movements he had seen Simmons make toward the floor of the

vehicle. Officer Thomas explained that, based upon his experience and training, it appeared to him that Simmons was attempting to conceal something. Officer Thomas found a firearm underneath the driver's seat where Simmons had been sitting. Officer Thomas explained that he found the gun while accessing the inside of the vehicle from the passenger door on the driver's side. He explained that the gun was underneath the driver's seat, closer to the front of the vehicle than to the back seat area, and was not visible with the seat in its forward-most position. He further explained that the gun's location was consistent with Simmons's movements. Neither Simmons nor his passengers claimed ownership of the firearm.

{¶8} During the course of the traffic stop, the officers determined that Simmons had been driving without a license. A background check on the firearm revealed that it had been reported stolen in Twinsburg, Ohio approximately one year earlier, in July 2015. Officer Thomas explained that he decided to arrest only Simmons and not his passengers, because the firearm was found under Simmons's seat and the movements he observed Simmons make were consistent with him attempting to conceal the firearm under his seat.

{¶9} After the state rested its case, defense counsel moved for a judgment of acquittal under Crim.R. 29, arguing that the state had failed to meet its burden that Simmons acted "knowingly" regarding each count of the indictment. The defense asserted that the state did not prove that Simmons had knowledge of the firearm's

presence in the vehicle he was operating. The trial court denied this motion and the defense's renewed motion made after it rested its case.

{¶10} At the conclusion of trial, the jury found Simmons guilty of carrying a concealed weapon and improperly handling firearms in a motor vehicle. In January 2017, the trial court sentenced Simmons to a one-and-a-half year term of community control.

{¶11} It is from this order that Simmons appeals, raising the following single assignment of error for our review:

<u>Assignment of Error</u>

The trial court committed reversible error in denying [Simmons's] [Crim.R. 29] motion for a judgment of acquittal where the state failed to present evidence sufficient to support [Simmons's] convictions.

{¶12} In his sole assignment of error, Simmons argues that the trial court committed reversible error by denying his Crim.R. 29 motion for acquittal because the state failed to prove beyond a reasonable doubt the requisite mental state for each count in the indictment, specifically that he knew of the presence of the firearm in the vehicle.

{¶13} Crim.R. 29(A) provides, in relevant part:

The court on motion of a defendant * * * after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * * if the evidence is insufficient to sustain a conviction of such offense or offenses.

{¶14} Our standard of review of the denial of a Crim.R. 29 motion is the same standard for a review of sufficiency of the evidence. *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus. When reviewing the sufficiency of the evidence,

"[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶15} Simmons was convicted of carrying a concealed weapon in violation of R.C. 2923.12(A)(2), which provides in relevant part that "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand * * * [a] handgun other than a dangerous ordnance."

{¶16} The jury also convicted Simmons of one count of improper handling of a firearm in a motor vehicle in violation of R.C. 2923.16(B), which provides in relevant part:

> No person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle.

{¶17} We note that the offenses of carrying a concealed weapon and improper handling of a firearm in a motor vehicle both require the state to prove beyond a reasonable doubt that the defendant acted "knowingly." Under R.C. 2901.22(B), "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist."

{¶18} As stated above, Simmons argues that his Crim.R. 29 motion should have been granted because the state failed to prove beyond a reasonable doubt that he was aware of the presence of the firearm in the vehicle. In asserting this argument, Simmons relies on *State v. Smith*, 176 Ohio App.3d 119, 2008-Ohio-1682, 890 N.E.2d 350 (2d

Dist.), which, he argues, presents a "nearly identical factual scenario" to the instant case. In *Smith*, the Second District Court of Appeals found that the trial court should have granted the defendant Smith's Crim.R. 29 motion for acquittal because his carrying-a-concealed-weapon conviction was predicated upon one of the other passenger's statement to police that was later recanted.

{¶19} The Second District explained the relevant facts of *Smith* as follows:

On April 23, 2005, Dayton Police Officers initiated a traffic stop of a vehicle owned and driven by Amber Ross. The stop was made in response to information received by the police which indicated that Ross had outstanding warrants for her arrest and that she had a handgun in the car.

At the time of the stop, Smith was a passenger seated in the back passenger side of the vehicle. Another individual, Amber Joyce, occupied the driver side back seat. A fourth person, Dana Lindsey, was in the front passenger seat. Following the stop, Ross was arrested and the vehicle was towed. An inventory search of the vehicle produced a .40 caliber Beretta handgun which was found mixed in with trash under the driver's seat.

When questioned by police, Lindsay stated that Smith gave Joyce the gun and that Joyce placed the gun under the driver's seat. Smith was arrested and indicted for carrying a concealed weapon and having a weapon while under disability. Following a jury trial, [Smith] was convicted as charged and sentenced to a prison term of six and one-half years.

*Id*. at ¶ 2-4.

{¶20} The *Smith* court further explained that at trial the state produced testimony from one of the arresting officers that he observed "'the shoulder moving, dipping down * * * on the backseat passenger-side occupant [and that] immediately thereafter, the other back seat passenger was observed making a 'furtive movement' by leaning 'forward as if they're stuffing something underneath the driver's seat.'" *Id*. at ¶15.

**{¶21}** At Smith's trial, Lindsay recanted his earlier statement to Dayton Police pinning possession of the firearm on Smith:

> Lindsay testified that Ross had told him that she had a gun in the car before he and Ross picked up Smith. He further testified that he did not see a gun until the police were initiating the stop. He testified that before the stop, he had tried to pass an alcohol bottle to Smith, but that Smith was "passed out." Finally, he testified that while the police were pursuing the vehicle, he observed Ross remove a gun from the car console, eject a bullet from it, and pass it to Joyce who was behind her.
>
> The State then attempted to impeach Lindsey [sic] by using his prior unsworn statement in which he indicated that Smith had the gun and that he handed it to Joyce to put under the driver's seat. The trial court permitted the State to question Lindsey [sic] about the prior statement. However, when asked about the statement, Lindsey [sic] testified that he lied in the statement because he wanted to prevent Ross from going to jail.

*Id.* at ¶ 16-17.

**{¶22}** We find that the facts of *Smith* are distinguishable from the instant case. Here, none of the occupants of the car made any statements to police as to who had possessed the firearm. Moreover, the firearm was found directly beneath Simmons's seat, and Officer Thomas observed him making furtive movements toward that area.

**{¶23}** In the instant matter, the state presented evidence that Simmons was in the driver's seat, the firearm was recovered from under his seat, and Officer Thomas observed Simmons make a reaching movement down under his seat toward the center console. Additionally, Officer Thomas kept surveillance on the two passengers while his

partner secured Simmons in the patrol car. He testified that neither passenger made any movement toward the area in which the firearm was found.

{¶24} We find that foregoing evidence presented by the state was sufficient to support the jury's finding that Simmons knowingly possessed a concealed weapon and improperly handled that firearm in the motor vehicle he was operating. Therefore, the trial court did not err in denying his Crim.R. 29 motion for acquittal.

{¶25} Accordingly, the single assignment of error is overruled.

{¶26} Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

EILEEN A. GALLAGHER, A.J., and
KATHLEEN ANN KEOUGH, P.J., CONCUR